UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| PATRICIA M. THOMPSON,<br>      Plaintiff, | )<br>)<br>) |
| v. | )   No. 3:08-CV-251<br>)   (Phillips) |
| STATE OF TENNESSEE, et al.,<br>      Defendants. | )<br>) |

## MEMORANDUM OPINION

Plaintiff, Patricia Thompson, acting *pro se*, has brought this action against the defendants alleging unreasonable search and seizure during a traffic stop, in violation of 41 U.S.C. § 1983. Defendants, pursuant to Rule 56, Federal Rules of Civil Procedure, move for judgment as a matter of law on plaintiff's claims. Captain Victor Donoho and Sgt. Donald Velez assert that their only involvement with plaintiff was their attempt to investigate her complaint against defendants Lt. Kimberly Ogle and Trooper Jackie Bailey, who conducted the traffic stop at issue. Lt. Ogle and Trooper Bailey have moved for summary judgment stating that the search and seizure of Thompson was reasonable under the circumstances, there was no violation of Thompson's civil rights, and they are entitled to qualified immunity for their actions. For the reasons which follow, the defendants' motions for summary judgment will be granted and this action will be dismissed.

Factual Background

Officers Ogle and Bailey stopped Thompson for a traffic violation. While the traffic ticket was being investigated and written, the officers saw numerous pill bottles in Thompson's car, but she initially denied having any prescription medication. Thompson became upset when asked whether the officers could search her vehicle, and initially refused the officers' orders to get out of her vehicle. After Thompson complied with the officers' orders and exited the vehicle, Lt. Ogle did a brief pat-down to check for weapons. Thompson then admitted that she had prescription medicine and showed the medicine to the officers. Lt. Ogle completed the ticket and let Thompson leave.

Thompson later made a complaint to the Tennessee Department of Safety regarding the traffic stop and Sgt. Velez went to plaintiff's place of employment to conduct an interview of her, but she refused to talk to him. Thompson's complaint contains no allegations regarding Captain Donoho.

At the time of the incidents alleged, Donoho was a Captain with the Tennessee Highway Patrol Office of Professional Responsibility. Captain Donoho sent Thompson a letter acknowledging her complaint against Lt. Ogle and Trooper Bailey, assigned an investigator (Sgt. Donald Velez), reviewed the findings, and sent Thompson a letter letting her know that the Office of Professional Responsibility found that the actions of Lt. Ogle and Trooper Bailey were appropriate.

Sgt. Velez was assigned to investigate the complaint Thompson filed against Lt. Ogle and Trooper Bailey. As part of his investigation, Sgt. Velez attempted to interview Thompson. She had not provided a telephone number with her complaint, but had listed Wal-Mart as her place of employment. Sgt. tried to interview Thompson in the parking lot of the Wal-Mart where she worked, but she refused to talk to him. Sgt. Velez gave Thompson his business card and asked her to call him about her complaint. Thompson never called Sgt. Velez.

In support of the defendants' motion for summary judgment, Lt. Ogle submitted the following affidavit:

> On June 16, 2007, I stopped plaintiff for speeding, and eventually had to write her a citation for speeding, lack of registration and lack of insurance on Chapman Highway in Seymour, TN. At the time I stopped plaintiff, she told me she was homeless and living from house to house. On June 27, 2007, I stopped plaintiff again for speeding. She was going 65 mph in a 45 mph zone. After she had stopped, plaintiff got out of her vehicle to approach me, which is not a usual response. I informed plaintiff that I had stopped her for speeding, asked for her documents, and asked her to get back into her vehicle. When I approached the vehicle, I did not realize that I had stopped her recently until we began speaking to each other. Plaintiff again did not have her registration or insurance.
>
> After I began the calls to check the license and the ownership of the vehicle, I went back to speak to plaintiff. As I was talking to her, I noticed that there were numerous pill bottles in a bag on the floorboard. I asked plaintiff if she was on any type of prescription medication and she said, "no." I asked her if she had anything illegal in the car, and she denied anything illegal. Because of the pill bottles and her response to my questions, I asked for permission to search the vehicle. At that time, plaintiff got very nervous and belligerent. She refused to let me

search the vehicle. I asked her to get out of the car, but she refused to get out of the car. I asked plaintiff several times to get out of the car, but she refused to get out of the car. I was worried that plaintiff may be under the influence and may be dangerous. I then called for a K-9 unit to come and do a sniff around the vehicle. Trooper Jackie Bailey, who had been working another ticket right behind me, came to help at some point while I was trying to deal with plaintiff who was very nervous, uncooperative and belligerent.

As we were waiting for a response to my request for a K-9 unit, Trooper Bailey also spoke to plaintiff, trying to convince her to just let us look in her car. She was almost hysterical about our request to search the car. After some time had passed, plaintiff finally got out of her car, still hysterical and belligerent. Because of plaintiff's irrational behavior, I was concerned that she may try to do harm to herself or to Trooper Bailey or myself. For that reason, I briefly patted her down for weapons and contraband, but did not find any. Trooper Bailey and I continued to talk to plaintiff, trying to get her to calm down as we waited for a K-9 unit, but plaintiff was irrational and would not listen to reason. She finally did tell Trooper Bailey and me that she had medicine that was her own in the car. She got the bag of medicine out of the car to show us. Inside the bag she had several types of medication, including two nearly full bottles of Hydrocodone from two different doctors. I was concerned that she may be impaired, so I asked her when was the last time she had taken the pills. She said she did not take them unless she was hurting. I asked her several times when was the last time she had taken the medication. She never gave us an answer to that question. I did a check on plaintiff to make sure she was not impaired. Because there was not a K-9 unit available, and plaintiff had finally shown us the medication, I decided to just give her a ticket and leave. From the time I stopped plaintiff until the time I gave her the ticket was approximately 30 minutes, which is only a couple of minutes more than it would have taken for me to write up the ticket for the three violations and check the information on the license and ownership of the vehicle.

The reason I stopped plaintiff was because she was going 65 mph in a 45 mph zone. I asked to search her vehicle because when I asked her about her medicine, she originally denied

-4-

> having any medicine, but I could clearly see the pill bottles on the floorboard in her car. My actions did not have anything to do with plaintiff's race.
>
> The only time I touched plaintiff was to lightly pat her down for weapons and contraband. I never put her in handcuffs and did not point my service weapon at plaintiff.

Affidavit of Kimberly Ogle, Court Doc. 20-2.

## Analysis

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Initially, the burden is on the moving party to conclusively show that no genuine issues of material fact exist, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th cir. 2003), and the court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323.

-5-

Case 3:08-cv-00251-TWP-CCS   Document 24   Filed 06/19/09   Page 5 of 18   PageID #: 174

The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question; but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994).

> Section 1983 states in pertinent part:
>
> Every person, who under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 makes liable only those who, "while acting under color of state law, deprive another of a right secured by the Constitution or federal law." *Romanski v. Detroit Entm't, L.L.C.,* 428 F.3d 629, 636 (6th Cir. 2005).

To establish a claim pursuant to § 1983, a plaintiff must demonstrate two elements: (1) that she was deprived of a right secured by the Constitution or laws of the United States; and (2) that she was subjected or caused to be subjected to this deprivation by a person acting under color of state law. *Gregory v. Shelby County,* 220 F.3d 433, 441 (6th Cir. 2000). Section 1983 creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere. *Gardenhire v. Shelby County*, 205 F.3d 303, 310 (6th Cir. 2000). In this case, Thompson alleges that officers Ogle and Bailey violated her Fourth Amendment right to be free from unreasonable search and seizure as well as her Fourteenth Amendment right to equal protection of the laws.

A. Thompson's claim of verbal harassment does not raise a constitutional issue.

Thompson states that Lt. Ogle's "tone of voice wasn't pleasant. This really hurt me deeply." It is well settled that verbal harassment is not a constitutional claim. *Taylor v. City of Falmouth,* 187 Fed. Appx. 596 (6th Cir. 2006); *Ellis v. Ficano*, 73 F.3d 361 (6th Cir. 1995); *see also Emmons v. McLaughlin,* 874 F.2d 351 (isolated threats and verbal abuse are not violations of constitutional magnitude); *Macko v. Byron*, 760 F.2d 95, 97 (6th Cir. 1985) (fear from spoken words is not an infringement of a constitutional right).

B. Thompson's claim of violations of 18 U.S.C. § 242 and the Civil Rights Act of 1964 fail as a matter of law.

Case 3:08-cv-00251-TWP-CCS   Document 24   Filed 06/19/09   Page 7 of 18   PageID #: 176

18 U.S.C. § 242 is a criminal statute and does not provide for a private tort cause of action against the defendants. In addition, the Civil Rights Act of 1964, Title II applies to alleged discrimination in hotels, motels, restaurants, etc., and is not applicable to the claims here. The gravamen of plaintiff's complaint is for alleged unreasonable search and seizure, which the court will address next.

C.         Lt. Ogle had probable cause to stop Thompson for speeding. After that, the officers had reasonable suspicion to detain Thompson for potential drug violations, and they had reasonable suspicion to conduct a pat-down of Thompson for officer safety.

In her response to the defendants' motion for summary judgment, Thompson states that she does not believe that she was properly stopped. In addition, she states that the pat-down "was abusive and out of order." She states "Ogles [sic] roughly patted me down. Her patting me down wasn't lightly for a small woman. And the tone of her voice wasn't pleasant. This really hurt me deeply." Last, Thompson alleges that the detention time was not appropriate because "there was no possible criminal activity," and she "was not armed and dangerous."

Traffic Stop

If an officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment. *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). Whether a traffic stop is an unreasonable seizure in violation of the Fourth Amendment is assessed by

-8-

objectively evaluating the officer's conduct in light of the surrounding circumstances known to the officer. *Id.* at 388. Probable cause is "reasonable grounds for belief supported by less than *prima facie* proof but more than mere suspicion." *United States v. Bennett,* 905 F.2d 931, 934 (6th cir. 1990). In other words, probable cause means a substantial chance of likelihood of criminal conduct. *Ferguson*, 8 F.3d at 392.

In the instant case, Lt. Ogle has stated that she stopped Thompson because she was going 65 mph in a 45 mph zone. Thompson does not dispute that she was speeding at the time Lt. Ogle stopped her. Accordingly, Lt. Ogle had probable cause to believe that a traffic violation was occurring and could properly stop Thompson and detain her while issuing the traffic citation. *See United States v. Blair*, 524 F.3d 740, 752 (6th Cir. 2008) (holding that an officer may detain a vehicle and its occupants for the length of time necessary to complete the traffic stop).

*Terry* Investigation

Next, the court will examine whether Lt. Ogle possessed reasonable suspicion to conduct an investigatory detention of Thompson for illegal drug possession. A police officer may briefly detain an individual on less than probable cause. A brief investigative stop, or *Terry* stop, by an officer who is able to point to "specific and articulable facts" justifying his or her reasonable suspicion that the suspect has been or is about to be involved in criminal activity is not an unreasonable seizure. *United States v. Martin*, 289 F.3d 392, 396 (6th Cir. 2002) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).

-9-

Depending upon the circumstances giving rise to the investigative stop, the officer's reasonable suspicion permits the officer to detain the suspect while asking a moderate number of questions to identify the suspect and either confirm or dispel the officer's suspicions. *Martin*, 289 F.3d at 396. If the suspect's answers fail to supply the officer with probable cause to arrest the suspect, then the officer must release the suspect. *Id.* at 397.

In the present case, Lt. Ogle stated that she was suspicious that Thompson might be involved in criminal activity because after Thompson stopped her car, she got out and approached Lt. Ogle, which Lt. Ogle stated is not a usual response. Lt. Ogle informed Thompson that she had stopped her for speeding, asked for her documents, and asked her to get back into her vehicle. The court finds that Lt. Ogle could properly require Thompson to wait inside the car while the officer issued the traffic citation. An officer who stops a person for a traffic violation based upon probable cause can detain the person while he completes a records check and issues a citation. *See United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999).

After Lt. Ogle began the calls to check Thompson's license and registration, she went back to speak to Thompson. At this time, Lt. Ogle noticed numerous pill bottles in a plastic bag on the floorboard. When asked if she was on any type of prescription medication, Thompson answered "No." Lt. Ogle then asked Thompson if she had anything illegal in the car, and she denied having anything illegal. Lt. Ogle then asked for permission to search the vehicle. Lt. Ogle states at that point, Thompson "got very nervous and

belligerent. She refused to let me search the vehicle." Lt. Ogle asked Thompson several times to get out of the car, but Thompson refused. Lt. Ogle stated that she became worried that Thompson may have been under the influence and may be dangerous. While Lt. Ogle was calling for a K-9 unit, Trooper Bailey spoke to Thompson. Both officers described Thompson's demeanor as "very nervous, uncooperative, and belligerent."

Thompson's denial that she possessed any prescription medicine along with Lt. Ogle's observation of a bag of prescription pill bottles in plain view on the floorboard of the car, caused Lt. Ogle to believe that Thompson was lying to her and that Thompson may have been involved with illegal drugs. Thompson's nervousness and uncooperative manner contributed to the officer's suspicions of criminal activity. The court assesses the reasonableness of the officer's suspicions in light of the totality of the circumstances surrounding the stop. *See United States .v Arvizu*, 534 U.S. 266, 273 (2002); *Martin*, 289 F.3d at 398. Although an officer may not rely upon a mere hunch to support a *Terry* stop, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274. Based on the totality of the circumstances presented here, the court finds that Lt. Ogle had reasonable suspicion to detain Thompson to determine whether Thompson was involved in criminal activity.

*Terry* Frisk

With regard to the frisk of Thompson's person during the investigatory stop, an officer may frisk a suspect for weapons in order to assure the officer's safety if a reasonable officer under the circumstances would be justified in believing his safety was at risk. *See Terry,* 392 U.S. at 27; *United States v. Strahan*, 984 F.2d 155, 158 (6th Cir. 1993). This standard also applies when the individual is stopped for a traffic violation, permitting the officer to frisk for weapons if a reasonable person would conclude that the detainee "might be armed and presently dangerous" based upon the circumstances known at the time. *Pennsylvania v. Mimms*, 434 U.S. 106, 111-12 (1977); *United States v. Myers,* 102 F.3d 227, 232 (6th Cir. 1996) (holding that it is well-settled that an officer may frisk the subject of a traffic stop). The focus of judicial inquiry is whether the officer reasonably perceived the subject of a frisk as potentially dangerous, not whether he "had an indication that the defendant was in fact armed." *United States v. Bell*, 762 F.2d 495, 500 n.7 (6th Cir. 1985). This process allows officers "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008).

In the present case, the court examines the totality of the circumstances to determine whether the officers had a reasonable belief that their safety or that of others was in danger, thus justifying a *Terry* pat-down. Thompson's failure to follow the officers' instructions heightened the level of concern on the part of the officers. These officers were

-12-

aware that drug crimes very often involve firearm possession and use and the obvious attendant danger. In addition, Thompson displayed increasing nervousness and agitation. The Supreme Court has "recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow,* 528 U.S. 119, 124 (2000); *United States v. Shank*, 543 f.3d 309, 317 (6th Cir. 2008). Lt. Ogle stated that because of Thompson's irrational behavior, she was concerned that she may try to do harm to herself or to the officers. For that reason, she briefly patted her down for weapons and contraband, but did not find any. In this context, Thompson's brief detention and pat-down were reasonable under the circumstances faced by the officers.

When Thompson finally showed the officers the medication, which included two bottles of Hydrocodone from two different doctors, Lt. Ogle conducted a quick check to make sure Thompson was not impaired. Lt. Ogle completed the citations and allowed Thompson to leave. The court finds that the limited intrusion into Thompson's privacy which occurred here did not offend the Fourth Amendment.

D.        Lt. Ogle and Trooper Bailey are entitled to qualified immunity.

The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (quoting

-13-

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts generally employ a three-step test in reviewing claims for qualified immunity:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Sample v. Bailey*, 409 F.3d 689, 695-96. Consequently, if the police officers acted in an objectively reasonable manner, as assessed in the light of clearly established law at the time of the conduct at issue, they will be insulated by qualified immunity. *Harlow*, 457 U.S. at 818. Thus, even if a police officer has deprived a plaintiff of a federal right, qualified immunity will apply if an objectively reasonable officer would not have understood, by referencing clearly established law, that his conduct was unlawful. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998); *Rich v. City of Mayfield Hts.,* 955 F.2d 1092, 1095 (6th Cir. 1992). Whether an asserted federal right was clearly established at a particular time presents an issue of law. *Elder v. Holloway*, 510 U.S. 510, 516 (1994). In inquiring whether a constitutional right is clearly established, a trial court must look first to decisions of the Supreme Court, and then to decisions of the Sixth Circuit and other courts within the circuit, and finally to decisions of other circuits. *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993).

The "ultimate burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity." *Rich,* 955 F.2d at 1095. Claims of qualified immunity are assessed on a fact-specific basis to ascertain whether the particular conduct of the defendant police officers infringed on the clearly established federal right of the plaintiff, and whether an objective, reasonable officer would have believed that his conduct was lawful under extant federal law. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Officials are entitled to qualified immunity "when their decision was reasonable, even if mistaken." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995). Further, "if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.*

The threshold issue is whether Thompson has alleged a constitutional violation by Lt. Ogle and Trooper Bailey. Viewing the actions of the officers from the perspective of a reasonable officer on the scene and without the benefit of 20/20 hindsight, the court finds that the officers acted in a reasonable manner. The initial decision to pull Thompson over was justified by her speeding 65 mph in a 45 mph zone. Once stopped, Thompson got out of her car, which Lt. Ogle stated was unusual for a traffic stop. When Lt. Ogle was talking with Thompson, she observed several prescription pill bottles in a bag on the floorboard, which Thompson denied having. When asked for permission to search the vehicle, Thompson became hysterical according to the officers. This behavior alerted the officers that Thompson may be involved in illegal drug activity, and the officers were aware that weapons frequently accompany drugs. Thompson was detained for further

questioning to dispel the officers' suspicions of illegal drug activity. She was frisked for weapons, but not placed in handcuffs. When she admitted that the pill bottles were her own prescription medication and showed the medication to the officers, Lt. Ogle wrote her citations and allowed her to leave. The length of the detention was brief and the amount of force used by Lt. Ogle was minimal. Police officers are often forced to make split-second judgments such as the ones the officers were forced to make in this case. The United States Supreme Court has recognized that a calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary in a particular situation. *Graham,* 490 U.S. at 396-97. The court finds the force used in this case was reasonable in the light of the circumstances. Because Thompson cannot show that the officers actions were unreasonable under the circumstances, she cannot meet the first prong of her burden of proof on the issue of qualified immunity. Accordingly, these officers are entitled to qualified immunity on Thompson's claims under § 1983.

E.        Thompson's Equal Protection Claim fails as a matter of law.

Thompson states in her complaint, "I feel and know that I was being racially profiled. I believe her harsh and discriminative action was due to my race." However, Thompson provides no facts as to why she feels that she was being racially profiled. Thompson must show by clear, direct, circumstantial or statistical evidence that she was the target of selective enforcement based on her race. *See Gardenhire*, 205 F.3d at 318;

-16-

*Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997). In the absence of clear evidence to the contrary, the court is to presume that the officers properly discharged their duties. *Id.* In light of the deference given to the discretionary decisions of law enforcement officers, and the dearth of evidence to the contrary, defendants are entitled to judgment as a matter of law on Thompson's Equal Protection claim.

F.        Defendants Donoho and Velez did not violate Thompson's civil rights.

A review of Thompson's complaints against Captain Donoho and Sgt. Velez does not show any conduct by these defendants which violates any of plaintiff's civil rights. The undisputed facts demonstrate that all these two defendants did was investigate the complaint Thompson filed with the Tennessee Highway Patrol. From plaintiff's response, it appears that her complaint against the defendants is that Sgt. Velez attempted to contact Thompson on her "personal lunch break." Thompson further states that "the Department should have went through NAACP first, they knew NAACP was handling my case." Thompson goes on to state that she "had the privilege of breaking without interruption, unless I committed a crime," and that "I was deprived of my break rights" by these defendants. Thompson has cited no authority, and the court is not aware of any authority, holding that interference with one's lunch break is a constitutional offense. In any event, when Thompson refused to talk to Sgt. Velez, he gave her his card and left. The court finds that Thompson has failed to allege facts to show a constitutional violation. Accordingly, the court finds that Captain Donoho and Sgt. Velez are entitled to judgment as a matter of law on Thompson's claims against them.

## Conclusion

For the reasons stated above, the court finds that the defendants are entitled to summary judgment on all Thompson's claims. Accordingly, the defendants' motions for summary judgment [Docs. 15, 20] are **GRANTED** and this action is **DISMISSED WITH PREJUDICE.**

**ENTER:**

    s/ Thomas W. Phillips
United States District Judge

-18-

Case 3:08-cv-00251-TWP-CCS   Document 24   Filed 06/19/09   Page 18 of 18   PageID #: 187